UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EDWARD L. DAVIS, individually and on behalf
of all others similarly situated,

Plaintiff,

- against-

KRISTIN M. PROUD, as Commissioner
of the Office of Temporary and Disability
Assistance of the New York State Department of
Family Assistance, and TOM VILSACK, as
Secretary of the United States Department of
Agriculture,

Defendants.
-------------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
**13-CV-1663 (SJF)(WDW)**

**FILED**
**IN CLERK'S OFFICE**
**U S DISTRICT COURT E D N Y**

★ MAR 05 2014 ★

**LONG ISLAND OFFICE**

On March 28, 2013, plaintiff Edward L. Davis ("plaintiff") commenced this putative class

action against defendants Kristin M. Proud, as Commissioner of the Office of Temporary and

Disability Assistance of the New York State Department of Family Assistance ("OTDA," "the

State defendant" or "Proud"), and Tom Vilsack, as Secretary of the United States Department of

Agriculture ("USDA" or "the Federal defendant"), pursuant to, *inter alia*, the Administrative

Procedure Act ("APA"), 5 U.S.C. § 702, and 42 U.S.C. § 1983 ("Section 1983"), seeking

declaratory and injunctive relief relating to defendants' restoration of benefits under the

Supplemental Nutrition Assistance Program ("SNAP"). Pending before the Court is the State

defendant's motion to dismiss the complaint as against it pursuant to Rules 12(b)(1) and (6) of the

Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim

for relief, in which the Federal defendant joins. For the reasons set forth below, the motion is

granted in part and denied in part.

1

I.    Background

    A.    Factual Background

On or about June 22, 2004, the Federal defendant approved the State defendant's five (5)-year pilot project known as the Group Home Standardized Benefit Program ("GHSBP"), (Complaint ["Compl."], ¶ 32), for the distribution of standardized SNAP allotments to eligible residents of certain group home facilities, as an alternative to the individualized calculation of SNAP benefits. (Compl., ¶ 31). GHSBP was implemented in most of New York, with the exception of New York City, on January 1, 2005, and was implemented in New York City on March 1, 2005. (Compl., ¶ 33).

In or about June 2006, certain residents of group homes entitled to and/or receiving Supplemental Security Income ("SSI") benefits commenced a hybrid proceeding ("the state court proceeding") pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR") and 42 U.S.C. § 1983 ("Section 1983") against Robert Doar, the former commissioner of the OTDA, and John E. Imhof, as commissioner of the Nassau County Department of Social Services ("DSS"), in the Supreme Court of the State of New York, County of Nassau ("the state court") alleging, *inter alia*, that "under the GHSBP, recipients of SSI benefits residing in group homes were awarded less than one half the monthly food stamp allotment given to similarly-situated [public assistance ('PA')] recipients, in violation of their equal protection rights." In re Graves v. Doar ("Graves II"), 87 A.D.3d 740, 742, 928 N.Y.S.2d 774 (2d Dept. 2011).[1]

---

[1]    The following claims were raised in the state court proceeding: (1) that "the unfavorable [SNAP] allocation to group home recipients of SSI benefits" under the GHSBP, "in comparison to the more favorable [SNAP] allocation to similarly situated group home recipients of PA [Public Assistance] benefits, is arbitrary, capricious, an abuse of discretion, and violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and of Article I of § 11 of the New York State Constitution[;]" (2) that "[b]y virtue of the foregoing,"

By decision and order dated October 1, 2007, the state court (Woodard, J.), *inter alia*: (1) denied the motion of the petitioners therein seeking certification of the state court proceeding as a class action pursuant to Sections 901 and 902 of the New York Civil Practice Law and Rules; and (2) granted a separate motion by the petitioners therein seeking partial summary judgment declaring that the OTDA's "implementation of GHSBP violate[d] the rule-making requirements of Article IV § 8 of the New York State Constitution and Article 2 of SAPA." In re Graves v. Doar, No. 10218/06, 2007 N.Y. Slip Op. 33147(U) (N.Y. Sup. Ct. Oct. 1, 2007) (See Compl., Ex. B). Partial final judgment was entered upon the October 1, 2007 decision and order in the state court proceeding on December 13, 2007. In re Graves v. Doar, No. 10218/06 (N.Y. Sup. Ct. Dec. 13, 2007) (See Compl., Ex. C). By order dated May 19, 2009, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("Appellate Division"), *inter alia*, reversed so much of the state court's October 1, 2007 order as denied the petitioners' motion seeking class certification and granted that branch of the petitioners' motion to the extent of certifying a class ("the Graves class") consisting of:

> "[A]ll recipients of [SNAP] in the State of New York whose [SNAP] benefits were determined and reduced under the [GHSBP] and whose monthly income included payments of [SSI] benefits."

---

the State defendant violated Section 1983; (3) that "[t]he unfavorable [SNAP] allocation to group home recipients of SSI benefits under defendants' GHSBP, in comparison to the more favorable [SNAP] allocation to similarly situated group home residents with other sources of income, is arbitrary, capricious, an abuse of discretion, and violates defendants' affirmative duty to aid the needy under Article XVII § 1 of the New York State Constitution[;]" (4) that the "operation of the GHSBP without any properly promulgated regulations is arbitrary, capricious, an abuse of discretion, and violates the rulemaking requirements of Article IV § 8 of the New York State Constitution and Article 2 of SAPA [the New York Administrative Procedure Act] [;]" and (5) that "[b]y virtue of the foregoing," the State defendant's affirmance of the determination to reduce the plaintiffs' monthly SNAP benefits, effective January 1, 2005, was "arbitrary, capricious, an abuse of discretion, and in error of law." (Memorandum of Law in Support of State Defendant's Motion to Dismiss the Complaint ["State Mem."], Appendix C).

In re Graves v. Doar ("Graves I"), 62 A.D.3d 874, 875, 879 N.Y.S.2d 204 (2d Dept. 2009).

Effective October 1, 2008, the State defendant "abandoned * * * the operation of the GHSBP, and returned to the individualized computation of SNAP benefits for group home residents." (Compl., ¶¶ 35-36).

By order dated March 31, 2009, the state court (Woodard, J.), *inter alia*, "declared that the implementation of the GHSBP violated the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and article I (§ 11) of the New York Constitution[,]" and "directed the restoration of monthly food stamp benefits which the petitioners [in the state court proceeding] would have received had the GHSBP not been implemented * * *." Graves II, 87 A.D.3d at 742, 928 N.Y.S.2d 774. (See Compl., Ex. D). By decision dated August 30, 2011, the Appellate Division, affirmed, as modified, the state court's March 31, 2009 order, finding, *inter alia*, that the state court properly: (1) "declared that the implementation of the GHSBP violated the Equal Protection Clauses of the United States and New York Constitutions since the petitioners [in the state court proceeding] established that the respondents/defendants [thereto] did not have a rational basis for providing higher allotments of food stamps to similarly-situated recipients of PA than to recipients of SSI," Graves II, 87 A.D. 3d at 742-43, 928 N.Y.S.2d 774; (2) "limited the petitioners' recovery to the restoration of monthly food stamp benefits which they would have received had the GHSBP not been implemented," id. at 743, 927 N.Y.S.2d 774; and (3) "in effect, declared that the GHSBP does not violate article XVII, § 1 of the New York Constitution." Id. The Appellate Division further held:

> "To the extent that the petitioners [in the state court proceeding] seek retroactive relief in the form of [SNAP] allotments that are equal to those awarded to their counterparts receiving PA, the cause of action pursuant to 42 USC § 1983 is barred since it does not seek to conform the future conduct of the State and its officers to

4

constitutional norms, but seeks merely to recover damages from the State to remedy a past violation of law, and the State and its officers in their official capacities are not 'persons' within the meaning of 42 USC § 1983 subject to such liability * * *. The petitioners are also not entitled to recover retroactive benefits equal to those received by their PA recipient counterparts pursuant to their state constitutional claims, as such relief would be inconsistent with the Supreme Court's prior invalidation of the GHSBP methodology of calculating [SNAP] benefits * * *."

Id. at 743, 927 N.Y.S.2d 774 (citations omitted).

Subsequently, the State defendant devised a SNAP restoration plan calling for the restoration of SNAP benefits to the Graves class members in New York City ("the NYC class members") for the forty-three (43)-month period from March 1, 2005 through September 30, 2008, and to the remaining Graves class members ("the non-NYC class members") for the forty-five (45)-month period from January 1, 2005 through September 30, 2008, and submitted it to the Federal defendant for approval. (Compl., ¶¶ 40-41).

On or about August 26, 2010, the Federal defendant requested specific information from the State defendant regarding its request for approval of the SNAP restoration plan, (See Compl., Ex. E), to confirm that the SNAP restoration plan met SNAP requirements. (See Compl., Ex. G). One of those questions was: "How would the calculation take into account changes in cost of living adjustments ['COLA']?" (See Compl., Ex. E). In a letter dated November 1, 2010, the State defendant responded, *inter alia*:

> "[W]e reviewed the impact of the SSI COLA and determined that [SNAP] benefits decreased $5.00 [five dollars] for [non-NYC] group home residents as a result of the COLA. We determined that 536 [five hundred thirty-six] individuals had a decrease in [SNAP] benefits solely as a result of the COLA and thus, are not part of the class. * * * As a result, the class size * * * will be reduced from 15,700 [fifteen thousand seven hundred] to 15,164 [fifteen thousand one hundred sixty-four] and the total estimated restored benefit would be reduced to approximately $7,900,000 [seven million nine hundred thousand dollars]."

(Compl., ¶ 42, Ex. E).

5

By letter dated September 7, 2011, the State defendant: (1) advised the Federal defendant, *inter alia*, (a) that it had "refined the estimates of the class size and the amount of the restored benefits" and (b) that "[t]he more refined estimates provide for restored benefits to be issued to a class of approximately 15,120 [fifteen thousand one hundred twenty] individuals with a total estimated restored benefit of approximately $6,616,989 [six million six hundred sixteen thousand nine hundred eighty-nine dollars][;]" and (2) requested the Federal defendant's "expeditious approval" of the SNAP restoration plan. (Compl., Ex. F).

By letter dated September 28, 2011, the Federal defendant, "relying upon information provided to [it] in [the State defendant's] * * * letters and * * * e-mail," approved the State defendant's SNAP restoration plan. (Compl., Ex. G). The September 28, 2011 letter indicated, in pertinent part:

> "[The Federal defendant] also previously received a request from plaintiffs' counsel * * * to review and approve its [sic] methodology for calculating restored benefits. [The Federal defendant] thanks counsel for his request, but declines to comment on [plaintiffs' counsel's] plan. To do so would be counter to [the Federal defendant's] precedent of reviewing and approving program-related issues with the State agencies which administer SNAP."

(Id.)

In or about February 2012, the State defendant issued one million six hundred forty-six thousand four hundred sixty-four dollars ($1,646,464.00) in restored SNAP benefits to three thousand seven hundred fifty-four (3,754) NYC class members. (Compl., ¶ 46, Ex. H).

Plaintiff alleges, upon information and belief, that on or about March 29, 2012, the State defendant mailed "Notices of Restored [SNAP] Benefits" ("the Notices") to approximately eleven thousand three hundred sixty-six (11,366) non-NYC class members to inform them of the amounts of their restored SNAP benefits. (Compl., ¶ 47). The Notices informed the Graves class members,

6

in relevant part:

> "Pursuant to the Order in <u>Graves</u>, and with the approval of the [Federal defendant], [the State defendant] calculated your restored [SNAP] benefit as follows: by calculating the difference between the [SNAP] benefit you received in the month prior to the GHSBP and the [SNAP] benefit you received in the month GHSBP began, minus $5 if you live outside of New York City due to your increase in SSI income as a result of the Cost of Living Adjustment [COLA] increase that occurred on January 1, 2005, and multiplying this amount by the number of months your household received [SNAP] benefits under GHSBP (up to 43 months in NYC and 45 outside NYC). The GHSBP was in effect for the period March 2005 through September 2008 in NYC, and January 2005 through September 2008 for areas outside NYC.
>
> A. <u>Your</u> [SNAP] benefit the month prior to GHSBP (NYC-Feb. 2005, Outside NYC-Dec. 2004)          $_____
>
> B. <u>Your</u> [SNAP] benefit in first month of GHSBP (NYC-March 2005, Outside NYC-Jan. 2005)          $_____
>
> C. <u>Your</u> monthly [SNAP] amount to be restored (A-B) (minus $5 if Outside NYC due to SSI COLA)          $_____
>
> D. Number of eligible months          _____
>
> E. **Your Total restored [SNAP] amount (CxD)**          $_____ "

(Compl., Ex. P). In addition, the Notices informed the <u>Graves</u> class members, *inter alia*: (1) that although they had the right to appeal the State defendant's decision regarding the amounts of their restored SNAP benefits, "[u]se of the USDA approved formula ('A'-'E') on front of th[e] notice [was] not reviewable;" (2) that they had ninety (90) days from the date of the Notices to ask for a fair hearing; (3) that following a request for a fair hearing, the State defendant would send them notice of when and where the fair hearing would be held; (4) that if they could not attend the fair hearing, they could send someone to represent them at the hearing; (5) that they "may be able to get a lawyer at no cost * * * by contacting [their] local Legal Aid Society or other legal advocate group. For the names of other lawyers, check [the] Yellow Pages under 'Lawyers';" and (6) that

7

the State defendant would send free copies of any documents requested from their respective case files if the NYC class members called, faxed or wrote to it at the telephone number, fax number or address, respectively, provided or if the non-NYC class members called it at the telephone number provided. (Id.) According to plaintiff, the Notices failed: (1) to identify counsel for the Graves class, "even though they had proposed to State Defendant as early as September 2009 that they be listed on such notice as a source of free legal assistance to class members," (Compl., ¶ 51); (2) "to inform class members of their right to request an agency conference, and/or a telephone or home hearing if they were unable to travel to or participate in a fair hearing at State Defendant's centralized hearing sites," (Compl., ¶ 52); and (3) to provide specific information explaining "how non-NYC class members could arrange to look at their SNAP case files or obtain free copies of documents from their files," (Compl., ¶ 53). Plaintiff further contends that the State defendant "refused to convene fair hearings that were requested by Graves class members to challenge either the adequacy of the amount of their pre-GHSBP SNAP allotment in December 2004 or the formula by which their restored SNAP benefits were calculated." (Compl., ¶ 54).

Plaintiff is a disabled individual who: (a) resided in a congregate care facility or group home in Suffolk County from December 2004 through September 2008, (Compl., ¶¶ 2, 10, 56), (b) received SSI and SNAP benefits from December 2004 through September 20, 2008, (Compl., ¶¶ 2, 10, 55, 57); and (c) is a member of the Graves class, (Compl., ¶ 61). According to plaintiff, prior to the implementation of the GHSBP, he received thirty-nine dollars ($39.00) in monthly SNAP benefits. (Compl., ¶ 58). By "Notice of Decision on Your [SNAP]" ("SNAP Decision"), dated November 14, 2004, plaintiff was advised, *inter alia*, that beginning January 1, 2005, his monthly SNAP benefits would be reduced to thirty-two dollars ($32.00) "because effective January 1, [his] income [would] increase due to a cost-of-living adjustment (COLA) in [his] social security, SSI

and/or veterans non-service connected disability benefits[] [and] [the] increase in income to [his] household must be used to figure the amount of [his] [SNAP benefits]." (Compl., Ex. I). By "Decision After Fair Hearing," dated January 20, 2006, the State defendant determined, *inter alia*, that its SNAP decision "was correct." (Compl., Ex. J).

On or about March 31, 2012, plaintiff received a Notice of restored SNAP benefits indicating that his total restored SNAP benefits amount was ninety dollars ($90.00), determined by multiplying the difference between the SNAP benefit he received in December 2004, i.e., thirty-nine dollars ($39.00), and the SNAP benefit he received in January 2005, i.e., thirty-two dollars ($32.00), less five dollars ($5.00) for non-NYC members because of the COLA to SSI, i.e., two dollars ($2.00), by the number of months his household received [SNAP] benefits under the GHSBP, i.e., forty-five (45) months. (Compl., Ex. K).

By letter to the state court dated April 23, 2012, plaintiff's counsel sought "a directive" from the state court compelling the State defendant to produce "a computer file containing the data used * * * to generate the Notices * * * to see if the 'Line A' numbers on the notices accurately reflect the inclusion of the Telephone Standard Utility Allowance."[2] (State Mem., Appendix A at 3).

By e-mail addressed to "Mr. Marc L. Kaplan[,] Records Access Officer" of the State defendant, dated April 24, 2012, plaintiff's counsel, *inter alia*, made a Personal Privacy Protection Law request pursuant to New York Public Officers Law §§ 91, *et seq.*, and 19 N.Y.C.R.R. Part 339

---

[2] Plaintiff contended to the state court that the inclusion of a monthly thirty-three dollar ($33.00) Telephone Standard Utility Allowance when computing [SNAP] benefits to group home residents "should have resulted in a monthly [SNAP] increase of $10.00 to $11.00 per month and should have increased the GHSBP matrix benefits in like amount." (State Mem., Appendix A at 2).

seeking "[a] copy of [plaintiff's] Food Stamp budget for December 2004 (WMS Report:WBGTFS) under Suffolk County Department of Social Services case number: 5536." (Compl., Ex. L). By letter dated May 4, 2012, Mr. Kaplan: (1) advised plaintiff's counsel that the State defendant "does not possess copies of December 2004 Food Stamp budgets, for [plaintiff][;]" (2) suggested that counsel send his "request for records directly to the Suffolk County Department of Social Services ['DSS'][;]" and (3) advised counsel that he could "appeal the denial of [his] FOIL request within 30 business days, in accordance with Section 89(4)(a) of the [New York] Public Officers Law and [the State defendant's] regulations sent to the Appeals Officer * * *." (Compl., Ex. M). By letter dated June 7, 2012, the Appeals Officer: (1) affirmed the State defendant's denial of plaintiff's and three (3) other Graves class members' FOIL requests "on the grounds that [the State defendant] does not have possession of electronic copies of the 'Food Stamp budget for December 2004 (WMS Report: WBGTFS),' * * *[;]" (2) explained that the State defendant did not "possess [the] requested records because the electronic retention of those specific records did not begin until 2006" and that "prior to 2006, the [DSS] would have printed and stored each Advanced Boolean Expression Language (ABEL) budget output screen in a paper case file, and retain [sic] those files in accordance with the State Education Department record retention requirements[;]" and (3) advised (a) that the State department could not "recreate [the] requested 2004 budgets, because [it] cannot guarantee that the newly created budgets would be the same as, or substantially similar, to the budgets that the [DSS] worker created in 2004" and (b) that counsel could "bring a proceeding for court review of th[e] denial pursuant to Article 78 of the [New York] Civil Practice Law and Rules (CPLR) under the authority of § 97 of the [New York] Public Officers Law * * * within four months of the date that [he] receive[d] th[e] [Appeals Officer's] letter." (Id.) There is no indication in the complaint that plaintiff ever sought court review of the Appeals Officer's

10

determination in state court.

A final disposition was entered in the <u>Graves</u> state court proceeding on May 17, 2012. (State Mem., Appendix B).

By letter to the State defendant, dated June 26, 2012, plaintiff's counsel, *inter alia*: (1) requested fair hearings to contest the Notices sent to plaintiff and nineteen (19) other <u>Graves</u> class members on the ground "that the amount in items 'A' and 'E' are incorrect due to the failure to adhere to the requirements of GIS message 04 TA/DC 002[;]" and (2) sought "a DIRECTIVE IN ALL SIMILAR CASES, pursuant to 18 NYCRR 358-6.3, on behalf of all those members of the <u>Graves</u> class, whose [SNAP] benefits in December 2004 [Item 'A' on the Notice] were calculated without the a [sic] telephone standard utility allowance." (Compl., Ex. N). By letter dated October 25, 2012, the State defendant denied plaintiff's counsel's request for fair hearings on the grounds: (1) that it had "determined that [the] contention as to the amounts in 'A' and 'E' being incorrect due to an alleged failure to adhere to the requirements of GIS message 04 TA/DC 002, is not an issue which would be hearable under the terms and formula set forth in the <u>Graves</u> settlement[;]" and (2) that "<u>Graves</u> is specific as to what SNAP benefit amounts are to be used in determining the total amount of benefits to be restored, but there is no authority to review whether the amounts actually used in the restoration formula were properly calculated at the time of their initial issuance." (Compl., Ex. O).

By letter to the State defendant, dated March 11, 2013, plaintiff's counsel: (1) claimed that the State defendant had "unjustifiably deprived class members who live outside of New York City ('non-NYC') of $2.00 per month of restored SNAP benefits for as many as 45 months" because "the monthly reduction [for the COLA of the non-NYC class members' SSI] should have been $3.00, not $5.00 * * *[;]" and (2) requested that the State defendant "take immediate action to

11

restore th[o]se lost SNAP benefits to non-NYC class members * * * no later than March 22, 2013." (Compl., Ex. P). According to plaintiff, he had not received a response to the March 11, 2013 letter as of the date he commenced this action. (Compl., ¶ 69).

B.    Procedural Background

On March 28, 2013, plaintiff commenced this putative class action against the State defendant and the Federal defendant pursuant to, *inter alia*, the APA and Section 1983, seeking declaratory and injunctive relief relating to defendants' restoration of SNAP benefits due to the State defendant's wrongful implementation of the GHSBP. Specifically, plaintiff contends: (1) that "Defendants' determination to reduce by $5.00 the monthly amount of restored SNAP benefits * * * is arbitrary and capricious, unsupported by the facts and violates the SNAP budgetary formula set forth in 7 U.S.C. §§ 2014(e) and 2017(a), 7 C.F.R. § 273.10(e) and 18 N.Y.C.R.R. § 387.15" (first cause of action), (Compl., ¶ 78); (2) that the State defendant's Notices were "arbitrary and capricious, and violate[] the Due Process Clause of the Fourteenth Amendment to the United States Constitution, 7 C.F.R. §§ 273.13(a)(2) and 273.17(b), and 18 N.Y.C.R.R. §§ 358-2.2(a) and 358-3.3(b)(2)" (second cause of action), (Compl., ¶ 80); (3) that the State defendant's "refusal to convene timely requested fair hearings * * * is arbitrary and capricious, and violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution, 7 U.S.C. § 2020(e)(1), 7 C.F.R. §§ 273.15(g) and (h), and 273.17(c)(1) and 18 N.Y.C.R.R. §§ 358-3.1(a) and (b)(8) and 387.2(q)" (third cause of action), (Compl., ¶ 82); (4) that defendants' "failure to take prompt action on the March 11, 2013 request by plaintiff's counsel for the restoration of additional SNAP benefits * * * is arbitrary and capricious, and violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, 7 U.S.C. §§ 2020(b) and (e)(11)

12

and 2023(b), 7 C.F.R. § 273.17 and 18 N.Y.C.R.R. § 387.18" (fourth cause of action), (Compl., ¶ 84); and (5) that "[b]y virtue of the foregoing, State Defendant has violated 42 U.S.C. § 1983" (fifth cause of action), (Compl., ¶ 86). Plaintiff seeks, *inter alia*, declaratory and injunctive relief, together with costs and attorney's fees. (Compl. at 20-22).

The State defendant now moves to dismiss the complaint as against it pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim for relief, in which the Federal defendant joins.


II.     Discussion

        A.     Rule 12(b)(1)

                1.     Standard of Review

"Federal courts are courts of limited jurisdiction," Gunn v. Minton, — U.S. —, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); see also Mims v. Arrow Financial Services, LLC, — U.S. —, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (holding that federal courts may not exercise jurisdiction absent a statutory basis); Kokkonen, 511 U.S. at 377, 114 S. Ct. 1673 (holding that federal courts "possess only that power authorized by Constitution and statute * * *.") Lack of subject matter jurisdiction cannot be waived or forfeited and may be raised at any time by a party or by the court *sua sponte*. See Gonzalez v. Thaler, — U.S. —, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012); see also Sebelius v. Auburn Regional Medical Center, — U.S. —, 133 S. Ct. 817, 824, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even

by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy.");

Henderson ex rel. Henderson v. Shinseki, — U.S. —, 131 S. Ct. 1197, 1202, 179 L. Ed. 2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. * * * Objections to subject-matter jurisdiction * * * may be raised at any time.") If a court lacks subject matter jurisdiction, it must dismiss the action. See Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).

"[M]aterials extrinsic to the complaint" may be considered on a Rule 12(b)(1) motion. Moser v. Pollin, 294 F.3d 335, 339 (2d Cir. 2002); see also Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002).


### 2.    Rooker-Feldman Doctrine

The State defendant contends that since plaintiff's claims in this action are "inextricably intertwined" with the claims presented in the Graves state court proceeding, this Court lacks subject matter jurisdiction pursuant to the Rooker-Feldman doctrine.

Pursuant to what is commonly known as the Rooker-Feldman doctrine, federal district courts are prohibited from exercising subject matter jurisdiction over suits that are, in substance, appeals from state-court judgments. Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-415, 44 S. Ct. 149, 68 L. Ed. 2d 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed.2d 454 (2005), the Supreme Court limited the

application of the Rooker-Feldman doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284, 125 S. Ct. 1517; see also Skinner v. Switzer, — U.S. —, 131 S. Ct. 1289, 1297, 179 L. Ed. 2d 233 (2011); Lance v. Dennis, 546 U.S. 459, 126 S. Ct. 1198, 1201, 163 L. Ed. 2d 1059 (2006). Thus, there are four (4) requirements for the application of the Rooker-Feldman doctrine: (1) the party raising the claim must have lost in state court; (2) that party's injuries must be caused by the state court judgment; (3) that party's claims must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the commencement of the federal court proceedings. See McKithen v. Brown, 626 F.3d 143, 154 (2d Cir. 2010); Morrison v. City of New York, 591 F.3d 109, 112 (2d Cir. 2010). The first and fourth requirements are "procedural," while the second and third requirements are "substantive." Morrison, 591 F.3d at 112; Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009). "If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." Skinner, — U.S. —, 131 S. Ct. at 1297 (quotations, brackets and citation omitted).

With the exception of Hoblock v. Albany County Board of Elections, 422 F.3d 77 (2d Cir. 2005), all of the cases cited by the State defendant in support of its contention that plaintiff's claims against it in this action are barred under the Rooker-Feldman doctrine because they are "inextricably intertwined" with claims presented in the Graves state court proceeding pre-date Exxon Mobil. However, in Hoblock, the Second Circuit indicated:

> "The 'inextricably intertwined' language from Feldman led lower federal courts, including this court in Moccio [v. New York State Office of Court Administration],

15

95 F.3d [195,] 199-200 [(2d Cir. 1996)[3]], to apply <u>Rooker-Feldman</u> too broadly. In light of <u>Exxon Mobil</u> * * * it appears that describing a federal claim as 'inextricably intertwined' with a state-court judgment only states a conclusion. <u>Rooker-Feldman</u> bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment. But the phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in <u>Exxon Mobil</u>."

<u>Hoblock</u>, 422 F.3d at 86-87; <u>see also</u> <u>McLamb</u>, 280 Fed. Appx. at 108 ("<u>Rooker-Feldman</u> does not apply merely because a federal-court plaintiff's constitutional claims are 'inextricably intertwined' with a state-court decision.")

Contrary to the State defendant's contention, the <u>Rooker-Feldman</u> doctrine does not preclude plaintiff's claims against the State defendant in this action because, *inter alia*, plaintiff did not lose in the <u>Graves</u> state court proceeding, presents claims independent of those presented in the <u>Graves</u> state court proceeding and is not challenging the validity or enforcement of any order or judgment entered in the <u>Graves</u> state court proceeding. Accordingly, the branch of the State

---

[3] In <u>Exxon Mobil</u>, the Supreme Court expressly identified <u>Moccio</u> as an example of a court construing the <u>Rooker-Feldman</u> doctrine "far beyond the contours of the <u>Rooker</u> and <u>Feldman</u> cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superceding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738." <u>Exxon Mobil</u>, 544 U.S. at 283, 125 S. Ct. 1517. Despite the Supreme Court's clear abrogation of <u>Moccio</u>, <u>see</u> <u>McLamb v. County of Suffolk</u>, 280 Fed. Appx. 107, 108 (2d Cir. June 5, 2008) (summary order) ("To the extent that our cases reflect th[e] standard [that <u>Rooker-Feldman</u> applies where the plaintiff's constitutional claims in federal court are 'inextricably intertwined' with a state-court decision], <u>see</u>, <u>e.g.</u>, * * * <u>Moccio</u> * * *, they did not survive the Supreme Court's decision in <u>Exxon Mobil</u>."); <u>Hoblock</u>, 422 F.3d at 85 ("The Supreme Court [in <u>Exxon Mobil</u>] has now told us that <u>Moccio</u> * * * was incorrect."), the State defendant cites to that case in support of its "inextricably intertwined" argument. (State Mem. at 12). Moreover, as additional support for its <u>Rooker-Feldman</u> argument, the State defendant contends that "[u]nder New York State law, where a party's Article 78 petition appealing a decision of a state agency is dismissed 'on the merits', the doctrine of *res judicata* applies," (State Mem. at 11-12), notwithstanding that "<u>Exxon Mobil</u> teaches that <u>Rooker-Feldman</u> and [claim and issue] preclusion are entirely separate doctrines." <u>Hoblock</u>, 422 F.3d at 85; <u>see also</u> <u>Lance</u>, 546 U.S. at 466, 126 S. Ct. 1198 ("<u>Rooker-Feldman</u> is not simply preclusion by another name.")

defendant's motion seeking dismissal of plaintiff's claims against it as barred by the Rooker-Feldman doctrine is denied.

### 3. Eleventh Amendment Sovereign Immunity[4]

The State defendant contends that plaintiff's claims against it are barred by the principle of sovereign immunity under the Eleventh Amendment to the United States Constitution.

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." Coleman v. Court of Appeals of Maryland, — U.S. —, 132 S. Ct. 1327, 1333, 182 L. Ed. 2d 296 (2012). Absent consent, the Eleventh Amendment to the United States Constitution bars suits in federal court by private parties against a State, one of its agencies or departments or a state official acting in his or her official capacity. See California v. Deep Sea Research, Inc., 523 U.S. 491, 502, 118 S. Ct. 1464, 140 L. Ed. 2d 626 (1998) ("[A] state official is immune from suit in federal court for actions taken in an official capacity * * *." (citation omitted)); Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court."

---

[4] The State defendant includes its arguments that issue and claim preclusion bar plaintiff's claims against it in this case between its contentions that plaintiff's claims against it are barred by the doctrine of Rooker-Feldman and the principle of sovereign immunity under the Eleventh Amendment. Since the latter two (2) contentions implicate jurisdictional concerns that, if applicable, would require dismissal of plaintiff's claims against the State defendant pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, it may be inferred that the State defendant seeks dismissal of plaintiff's claims against it as barred by issue and claim preclusion pursuant to Rule 12(b)(1) as well. However, *res judicata*, which collectively refers to both claim preclusion and issue preclusion, see Taylor v. Sturgell, 553 U.S. 880, 892, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008), is an affirmative defense, see Fed. R. Civ. P. 8(c)(1), "not a jurisdictional matter." Exxon Mobil, 544 U.S. at 293, 125 S. Ct. 1517. Thus, the State defendant's preclusion argument is deemed brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

(quotations and citation omitted)); <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.") "Sovereign immunity principles enforce an important constitutional limitation on the power of the federal courts." <u>Sossamon v. Texas</u>, — U.S.—, 131 S. Ct. 1651, 1657, 179 L. Ed. 2d 700 (2011); <u>see also</u> <u>Pennhurst State</u>, 465 U.S. at 98, 104 S. Ct. 900 ("[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III * * *.")

"As an exception to this principle [of Eleventh Amendment sovereign immunity], Congress may abrogate the States' immunity from suit pursuant to its powers under § 5 of the Fourteenth Amendment." <u>Coleman</u>, — U.S. —, 132 S. Ct. at 1333; <u>see also</u> <u>United States v. Georgia</u>, 546 U.S. 151, 154, 158-59, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006). "Congress must make its intention to abrogate unmistakably clear in the language of the statute." <u>Coleman</u>, — U.S. —, 132 S. Ct. at 1333 (quotations, brackets and citation omitted); <u>see also</u> <u>Sossamon</u>, — U.S. —, 131 S. Ct. at 1661 ("[A] waiver of sovereign immunity must be expressly and unequivocally stated in the text of the relevant statute.") "[I]t is well settled that 42 U.S.C. § 1983 does not constitute an exercise of [Congress's] authority [to abrogate States' sovereign immunity pursuant to its powers under § 5 of the Fourteenth Amendment]," <u>Dube v. State University of New York</u>, 900 F.2d 587, 594 (2d Cir. 1990); <u>see also</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 342, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979) (holding that Section 1983 did not abrogate the States' Eleventh Amendment immunity), and plaintiff fails to identify any other statute abrogating the State's Eleventh Amendment immunity in this case.

A State's consent to suit must be "unequivocally expressed," <u>Pennhurst State</u>, 465 U.S. at

99, 104 S. Ct. 900, and "may not be implied." <u>Sossamon</u>, — U.S.—, 131 S. Ct. at 1658. "Generally, [courts] will find a waiver either if the State voluntarily invokes [federal court] jurisdiction * * *, or else if the State makes a clear declaration that it intends to submit itself to [federal court] jurisdiction * * *." <u>College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board</u>, 527 U.S. 666, 675-76, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) (quotations and citations omitted); <u>see also</u> <u>In re Charter Oak Associates</u>, 361 F.3d 760, 767 (2d Cir. 2004) (accord). There is no indication that the State defendant consented to suit or otherwise waived its sovereign immunity in this case.

Nonetheless, the Eleventh Amendment generally does not bar suits against state officials acting in their official capacity seeking prospective relief, i.e., to enjoin ongoing conduct that violates federal constitutional or statutory law, <u>see</u> <u>Ex parte Young</u>, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908) (holding that the Eleventh Amendment does not preclude a federal court from granting prospective injunctive relief to prevent a state official from continuing to violate federal law); <u>Frew ex rel. Frew v. Hawkins</u>, 540 U.S. 431, 437, 124 S. Ct. 899, 157 L. Ed. 2d 855 (2004) ("To ensure the enforcement of federal law * * * the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."), although that exception to Eleventh Amendment immunity is inapplicable to claims seeking retrospective relief. <u>See</u> <u>Papasan v. Allaub</u>, 478 U.S. 265, 277-78, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) ("<u>Young</u> has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as

compensation."); Green v. Mansour, 474 U.S. 64, 68, 106 S. Ct. 423, 88 L. Ed. 2d 423 (1985) (5-4 decision) ("We have refused to extend the reasoning of Young * * * to claims for retrospective relief.") The Ex parte Young exception to the Eleventh Amendment's sovereign immunity rests upon the premise "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes," Virginia Office for Protection and Advocacy v. Stewart, — U.S. —, 131 S. Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011), and "is limited to that precise situation * * *." Id. "An allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the Young [exception]." Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); see also In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007).

In ascertaining whether a claim is barred by the Eleventh Amendment or permitted under Ex parte Young, courts "look to the substance rather than to the form of the relief sought * * * and will be guided by the policies underlying the decision in Ex parte Young." Papasan, 478 U.S. at 278-79, 106 S. Ct. 2932 (citation omitted). "Whether a litigant's claim falls under the Ex parte Young exception to the Eleventh Amendment's bar against suing a state is a 'straightforward inquiry' that asks 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 372 (2d Cir. 2005) (quoting Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002)) (alteration in original)).

Plaintiff seeks, *inter alia*, judgment: (1) declaring (a) that defendants' "formula for the computation of restored SNAP benefits * * * is arbitrary and capricious, unsupported by the facts and violates the SNAP budgetary formula set forth in [federal law and federal and state

20

regulations]," (b) that the State Defendant's "Notice of Restored [SNAP] benefits" and "refusal to convene timely requested fair hearings" are "arbitrary and capricious, and violate[] the Due Process Clause of the Fourteenth Amendment to the United States Constitution, [federal law and/or federal and state regulations]," and (c) that defendants' "failure to take prompt action on the March 11, 2013 request by plaintiff's counsel for the restoration of additional SNAP benefits * * * "is arbitrary and capricious, and violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, [federal law and federal and state regulations];" and (2) "enjoining": (a) defendants "to recompute the amounts of restored SNAP benefits owed to plaintiff and the proposed plaintiff class by utilizing the SNAP budgetary formula set forth in [federal law and federal and state regulations]," (b) the State defendant (i) "to issue new Notices of Restored SNAP benefits to plaintiff and the proposed plaintiff class * * *" and (ii) "to convene administrative fair hearings that are timely requested by plaintiff and the proposed plaintiff class to contest the amount of restored SNAP benefits or any other action taken by State Defendant to restore SNAP benefits * * *," and (c) defendants "to act on the March 11, 2013 request by plaintiff's counsel for the restoration of additional SNAP benefits to plaintiff and the proposed plaintiff class * * *." (Compl. at 20-22).

Since the complaint alleges that the State defendant is in continued violation of federal law with respect to its computation and administration of restored SNAP benefits to the <u>Graves</u> class members and seeks, *inter alia*, the State defendant's compliance with federal law in that regard, the claims against the State defendant fall under the <u>Ex parte Young</u> exception to the principle of sovereign immunity and, thus, are not barred under the Eleventh Amendment.[5] <u>See, e.g. In re</u>

---

[5] "[T]he inquiry into whether suit lies under <u>Ex parte Young</u> does not include an analysis of the merits of the claim." <u>Verizon Maryland</u>, 535 U.S. at 646, 122 S. Ct. 1753.

Dairy Mart, 411 F.3d at 373 (holding that since the plaintiff's complaint alleged that State officials were in continued violation of federal law it "clearly satisfie[d] the straightforward inquiry test.") Moreover, "[i]nsofar as the exposure of the State [defendant] is concerned, the prayer for declaratory relief adds nothing to the prayer for injunction," Verizon Maryland, 535 U.S. at 646, 122 S. Ct. 1753, and, thus, is not barred by the Eleventh Amendment. Accordingly, the branch of the State defendant's motion seeking dismissal of the claims against it as barred by the principle of sovereign immunity under the Eleventh Amendment is denied.

B.    Rule 12(b)(6)

1.    Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires

22

"more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013); Rothstein v. UBS AG, 708 F.3d 82, 90 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950; see also Ruston v. Town Board for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("A court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." (quotations and citations omitted)). Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120-1 (2d Cir. 2010); see also Matson v. Board of Education of City School District of New York, 631 F.3d 57, 63 (2d Cir. 2011) ("While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." (internal quotations and citation omitted)).

The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also In re Thelen LLP, 736 F.3d

213, 219 (2d Cir. 2013). Accordingly, although I considered certain documents attached as appendices to the State defendant's memorandum of law in determining whether this Court has subject matter jurisdiction over this action, those documents of which I could not take judicial notice have not been considered in ascertaining the merits of plaintiff's claims against the State defendant.

### 2.    Preclusion

The State defendant contends that the doctrines of issue preclusion and claim preclusion bar plaintiff's claims in this action.

#### a.    Issue Preclusion

Issue preclusion, also known as collateral estoppel, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Taylor, 553 U.S. at 892, 128 S. Ct. 2161 (quotations and citation omitted); see also Postlewaite v. McGraw-Hill, Inc., 333 F.3d 42, 48 (2d Cir. 2003) ("Under either federal law of New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action.") Issue preclusion "bars litigation of an issue when[:]

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

Proctor v. LeClaire, 715 F.3d 402, 414 (2d Cir. 2013) (quoting Ball v. A.O. Smith Corp., 451 F.3d

66, 69 (2d Cir. 2006)); see also NML Capital, Ltd. v. Banco Central de la Republica Argentina, 652 F.3d 172, 185 (2d Cir. 2011), cert. denied by EM Ltd. v. Republic of Argentina, 133 S. Ct. 23, 183 L. Ed. 2d 692 (2012) (accord); Hoblock, 422 F.3d at 94 ("Under New York law, issue preclusion will apply only if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." (alteration in original; quotations and citation omitted)).

"The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion. . . . In contrast, the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with. . . the party opposing the application of issue preclusion." Proctor, 715 F.3d at 414 (quoting Kulak v. City of New York, 88 F.3d 63, 72 (2d Cir. 1996)); see also Cobb v. Pozzi, 363 F.3d 89, 113 (2d Cir. 2004) ("The burden of showing that an issue raised in a subsequent proceeding is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion." (quotations and citation omitted)). "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment, and issue preclusion will apply only if it is quite clear that this requirement has been met." Postlewaite, 333 F.3d at 49 (quotations, brackets, emphasis and citations omitted)); see also BBS Norwalk One, Inc. v. Raccolta, Inc., 117 F.3d 674, 677 (2d Cir. 1997) (accord).

"[I]n order for a judgment to be preclusive, the issue in question must have been actually decided, and its determination must have been essential to the judgment." Postlewaite, 333 F.3d at 48. "If an issue was not actually decided in the prior proceeding, or if its resolution was not necessary to the judgment, its litigation in a subsequent proceeding is not barred by [issue

25

preclusion]." Id. "The prior decision of the issue need not have been explicit, however, if by necessary implication it is contained in that which has been explicitly decided." Id. (quotations, brackets and citation omitted); see also Fuchsberg & Fuchsberg v. Galizia, 300 F.3d 105, 109 (2d Cir. 2002) (holding that a prior decision will have preclusive effect with regard to an issue, notwithstanding the failure of that prior decision to explicitly address that issue, "if resolution of the issue was by necessary implication. . . contained in that which was explicitly decided." (quotations, brackets and citation omitted)); BBS Norwalk, 117 F.3d at 677 ("The prior decision need not have been explicit on the point, since if by necessary implication it is contained in that which has been explicitly decided, it will be the basis for [issue preclusion]." (quotations, brackets and citations omitted)). "If the decision was implicitly necessary, it will be the basis for [issue preclusion]." Postlewaite, 333 F.3d at 48 (quotations and citation omitted).

Based upon the allegations in, and materials attached to, the complaint, the State defendant has not met its burden of showing "with clarity and certainty" that the issues raised in this action are identical to any issue raised in the Graves state court proceedings or were necessarily decided therein. The third and fourth causes of action in the complaint challenge conduct occurring after the final disposition of the Graves state court proceedings, i.e., the State defendant's purported refusal to convene timely fair hearings and failure to act promptly upon plaintiff's counsel's March 11, 2013 letter, and, thus, do not involve issues previously raised and decided in Graves. Moreover, the State defendant has established only that the state court determined that the Graves class members' recovery would be limited "to the restoration of monthly food stamp benefits which they would have received had the GHSBP not been implemented." Graves II, 87 A.D.3d at 743, 927 N.Y.S.2d 774. The complaint and exhibits attached thereto are devoid of any indication that the issues of a COLA to SSI to reduce the amounts of restored SNAP benefits for non-NYC

26

class members or the adequacy of the Notices of restored SNAP benefits were ever raised in the Graves state court proceedings or necessarily decided by the state court. Indeed, the State defendant even asserts that "[p]laintiff never questioned the inclusion of, or the amount of, the January 2005 COLA in the calculation of the restored SNAP benefits to the outside-NYC class members during the Graves litigation * * *." (State Mem. at 16). The State defendant's conclusory assertion that the state court "was presented with and approved the action plan as presented by the State in Graves that utilized the difference between what the SNAP recipient was receiving in benefits the month before the GHSBP went into effect versus the amount they received under the GHSBP, times the amount of months the GHSBP was in effect," (State Mem. at 15), is unsupported by any allegation in, or exhibit attached to, the complaint. In any event, there is no indication even from that assertion that the state court considered and decided the issue of whether the non-NYC class members' restored SNAP benefits should be reduced as a result of the January 2005 COLA to SSI. Accordingly, the branch of the State defendant's motion seeking dismissal of plaintiff's claims as barred by the doctrine of issue preclusion is denied without prejudice to renewal upon a motion for summary judgment following the close of discovery in this case, if warranted.

b.    Claim Preclusion

The doctrine of claim preclusion "applies in later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." In re Adelphia Recovery Trust, 634 F.3d 678, 694 (2d Cir. 2011) (brackets, quotations and citations omitted); see also Hecht v. United Collection Bureau, Inc., 691 F.3d 218, 221-22 (2d Cir. 2012); NML Capital, 652 F.3d at

184-85. Pursuant to the doctrine of claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action to support or to defend against the alleged cause of action." Proctor v. LeClaire, 715 F.3d 402, 411 (2d Cir. 2013) (brackets, quotations and citations omitted); see also In re Adelphia, 634 F.3d at 694 (holding that if the criteria for claim preclusion are met, "a final judgment on the merits . . . precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (brackets, quotations and citation omitted)). Under the doctrine of claim preclusion, "[a] prior judgment is [preclusive] only as to suits involving the *same cause of action*." Proctor, 715 F.3d at 412 (emphasis in original; quotations and citation omitted); see also Rezzonico v. H&R Block, Inc., 182 F.3d 144, 148 (2d Cir. 1999) ("If subsequent litigation arises from the same cause of action, * * * there is claim preclusion.") "If the second litigation involves different transactions, and especially subsequent transactions, there generally is no claim preclusion." Proctor, 715 F.3d at 412 (emphasis, brackets, quotations and citation omitted); see also Legnani v. Alitalia Linee Aeree Italiane, S.p.A., 400 F.3d 139, 141 (2d Cir. 2005) ("Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by [claim preclusion] regardless of whether they are premised on facts representing a continuance of the same course of conduct." (quotations and citation omitted)).

Since, *inter alia*, this action does not involve any of the same causes of action as those asserted in the Graves state court proceedings, the doctrine of claim preclusion does not preclude any of the claims asserted herein. Accordingly, the branch of the State defendant's motion seeking dismissal of plaintiff's claims as barred by the doctrine of claim preclusion is denied.

3.    Official Capacity Claims

The State defendant contends that all claims against Proud in her official capacity must be dismissed because she is not a "person" within the meaning of Section 1983.

Since "neither a state nor a state official in his official capacity is a 'person' within the meaning of Section 1983 * * *," Reynolds v. Barrett, 685 F.3d 193, 204 (2d Cir. 2012); see also Huminski v. Corsones, 396 F.3d 53, 70 (2d Cir. 2005) (accord), "state officials cannot be sued in their official capacities for retrospective relief under section 1983." Huminski, 396 F.3d at 70. "Nonetheless, state officials can be subject to suit in their official capacities for injunctive or other prospective relief." Id.; see also Reynolds v. Giuliani, 506 F.3d 183, 191 (2d Cir. 2007) (holding that since "[a]n official capacity suit against a public servant is treated as one against the governmental entity itself[,] * * * a state official may be sued in his or her official capacity for injunctive or other prospective relief, but only when the state itself is the moving force behind the deprivation."); Gaby v. Board of Trustees of Community Technical Colleges, 348 F.3d 62, 63 (2d Cir. 2003) ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under Section 1983 because official-capacity actions for prospective relief are not treated as actions against the State." (quoting Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n. 10, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989))).

Since, as set forth above, plaintiff seeks only prospective relief in this action, the State defendant is a "person" within the meaning of Section 1983. Accordingly, the branch of the State defendant's motion seeking dismissal of all official capacity claims against Proud is denied.

4. Due Process Claims

"The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, only against deprivations without due process of law." Rivera-Powell v. New York City Board of Elections, 470 F.3d 458, 464-65 (2d Cir. 2006) (quotations and citation omitted). In analyzing procedural due process claims, courts apply a two (2)-part test that asks: (1) whether the plaintiff "has a cognizable liberty or property interest under state or federal law," McKithen, 626 F.3d at 151; and (2) "if so, whether [the plaintiff] was afforded the process he was due under the Constitution." Id.; see also Swarthout v. Cooke, — U.S.—, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) ("[S]tandard analysis under [the Due Process Clause] proceeds in two steps: [Courts] first ask whether there exists a liberty or property interest of which a person has been deprived, and if so * * * whether the procedures followed by the State were constitutionally sufficient."); Rosu v. City of New York, — F.3d —, 2014 WL 485939 (2d Cir. Feb. 7, 2014) ("A Fourteenth Amendment due process claim entails a two-part inquiry to first determine whether plaintiff was deprived of a protected interest, and, if so, what process was his due." (brackets, quotations and citation omitted)).

"Social welfare benefits," such as SNAP, "have long been afforded constitutional protection as a species of property protected by the federal Due Process Clause." Kapps v. Wing, 404 F.3d 105, 113 (2d Cir. 2005). "While not all benefits programs create constitutional property interests, procedural due process protections ordinarily attach where state or federal law confers an entitlement to benefits." Id. "In determining whether a given benefits regime creates a property interest protected by the Due Process Clause, [courts] look to the statutes and regulations governing the distribution of benefits[,]" id., to ascertain whether they "meaningfully channel official discretion by mandating a defined administrative outcome * * *." Id. (brackets, quotations

30

and citation omitted); see also Handberry v. Thompson, 446 F.3d 335, 353 (2d Cir. 2006). Where "state or federal law 'meaningfully channels' the discretion of state or local officials by mandating an award of . . . benefits to applicants who satisfy prescribed eligibility criteria, plaintiff-applicants possess a property interest, protected by the federal Due Process Clause." Kapps, 404 F.3d at 113. Since SNAP benefits "are a matter of statutory entitlement for persons qualified to receive them," Atkins v. Parker, 472 U.S. 115, 128, 105 S. Ct. 2520, 86 L. Ed. 2d 81 (1985), they are "appropriately treated as a form of 'property' protected by the Due Process Clause * * *." Id.; see also Banks v. Human Resources Administration, No. 11-cv-2380, 2013 WL 142374, at * 2 (E.D.N.Y. Jan. 11, 2013) (finding that the plaintiff had a property interest in her SNAP benefits "which is protected by procedural due process."); Ford v. Shalala, 87 F. Supp. 2d 163, 175 (E.D.N.Y. 1999) ("Since 1970, the Supreme Court has recognized that, in appropriate circumstances, a person's interest in federal entitlements may constitute a protected property interest. These entitlements include[] public assistance benefits * * *, food stamp benefits, * * * and social security disability benefits * * *." (citations omitted)).

"[W]hen state law supports a party's legitimate claim of entitlement to a governmental benefit, that benefit cannot be stripped without procedural due process; and federal law determines what process is due." Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. * * * The answer to that question is not to be found in the [state] statute." (quotations and citations omitted)). "When a state-conferred benefit ripens into a property right, any procedures that the state establishes for the revocation of that interest must comport with federal procedural due process requirements." Kelly Kare, 930 F.2d at 175. "To determine

31

whether a constitutional violation has occurred, it is necessary to ask what process the State

provided, and whether it was constitutionally adequate." Rivera-Powell, 470 F.3d at 465 (bracket

omitted) (quoting Zinermon v. Burch, 494 U.S. 113, 126, 110 S. Ct. 975, 108 L. Ed. 2d 100

(1990)).

In determining what process is due, courts apply the test set by the Supreme Court in

Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). See Gilbert v.

Homar, 520 U.S. 924, 931-32, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997); Kapps, 404 F.3d at 118.

"Under Mathews, three factors guide [a court's] decision: 1) the private interest affected; 2) the

risk of erroneous deprivation, and the probable value, if any, 'of additional or substitute procedural

safeguards'; and 3) the government's interest, which may include the fiscal and administrative

burdens that additional procedures would impose." Kapps, 404 F.3d at 118 (quoting Mathews, 424

U.S. at 335, 96 S. Ct. 893); see also Rosu, — F.3d —, 2014 WL 485939. "[T]he requirements of

due process are flexible and cal[l] for such procedural protections as the particular situation

demands* * *." Wilkinson v. Austin, 545 U.S. 209, 224, 125 S. Ct. 2384, 162 L. Ed. 2d 174

(2005) (alteration in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 33

L. Ed. 2d 484 (1972)); see also Gilbert, 520 U.S. at 930, 117 S. Ct. 1807.

The importance of plaintiff's SNAP benefits is high and his interest in having restored the

full amount of his SNAP benefits withheld by the State defendant's wrongful implementation of

the GHSBP is substantial. Thus, federal due process requires that plaintiff be given notice of the

reasons for the State defendant's calculation of his restored SNAP benefits and an opportunity to

be heard in response. See, e.g. Kapps, 404 F.3d at 118 ("Pursuant to th[e] [Mathews] test, * * *

the process due to applicants for HEAP [Home Energy Assistance Program] benefits is notice of

the reasons for the agency's preliminary determination, and an opportunity to be heard in

response.")

              a.     Notice

"The essential requirements of due process * * * are notice and an opportunity to respond." Loudermill, 470 U.S. at 546, 105 S. Ct. 1487; see also LaChanc v. Erickson, 522 U.S. 262, 266, 118 S. Ct. 753, 139 L. Ed. 2d 695 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard." (quotations and citation omitted)). "In order to be constitutionally adequate, notice of benefits determinations must provide claimants with enough information to understand the reasons for the agency's action." Kapps, 404 F.3d at 123-24; see also Hart v. Westchester County Department of Social Services, 160 F. Supp. 2d 570, 575 (S.D.N.Y. 2001) ("[A] public welfare recipient must be given information sufficient to avail him of the opportunity to defend the impending termination of his benefits."); Ford, 87 F. Supp. 2d at 178 ("In order to enlist the effective support of the party most interested in correcting errors, a notice must 'detail the reasons for the proposed termination' so the recipient is able to determine whether the intended action 'rests on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of the particular case.'" (quoting Goldberg v. Kelly, 397 U.S. 254, 267-68, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970)). "Claimants cannot know *whether* a challenge to an agency's action is warranted, much less formulate an effective challenge, if they are not provided with sufficient information to understand the basis for the agency's action." Kapps, 404 F.3d at 124 (emphasis in original). However, "the specific type of notice required will vary depending on the circumstances of each given case." Id. "Under Mathews v. Eldridge, the cost to the government, the claimant's interest, as well as the availability of alternative means of obtaining information, must all enter into the analysis." Id.

The "Notices of Restored [SNAP] Benefits" sent to the non-NYC class members, including plaintiff, provided them with enough information to understand the reasons for the State defendant's determination of the amounts of restored SNAP benefits due them as a result of the wrongful implementation of the GHSBP and, thus, were constitutionally adequate. Specifically, the Notices explain the formula by which the amounts of restored SNAP benefits were calculated; identify the underlying facts upon which the calculations were based, including the reduction in the amount of restored SNAP benefits because of the COLA to SSI; and include a breakdown of the sums attributable to each factor in the equation. See, e.g. Ford, 87 F. Supp. 2d at 178 ("When the calculations are critical to the determination of eligibility or benefit amount, written notice must explain the formula by which the benefit amount was calculated * * *, identify the underlying facts upon which the calculations were based, * * * and include a breakdown of the sums attributable to each factor in the equation.") The information provided in the Notices was, thus, sufficient for plaintiff to check both the factual and mathematical accuracy of the State defendant's determination of the amount of restored SNAP benefits due him as a result of the State defendant's wrongful implementation of the GHSBP.

In addition, the Notices sufficiently apprised all recipients thereof, including plaintiff, *inter alia*: (1) of how to appeal the State defendant's determination of restored SNAP benefits, request a fair hearing, obtain free legal representation and obtain free copies of documents requested from their case files; and (2) that if they could not attend the fair hearing, they could send someone to represent them at the hearing. Thus, the Notices contained enough basic information to enable plaintiff to evaluate whether an appeal of the determination of his restored SNAP benefits was warranted and, if so, to appeal the State defendant's determination.

To the extent that plaintiff seeks to challenge the calculation of his SNAP benefit the month

34

prior to the GHSBP, i.e., the amount in line "A" of the USDA-approved formula contained in the "Notice of Restored [SNAP] Benefits," and the failure of the Notice to include any information regarding how that amount was calculated, such challenge is misplaced. The Notice pertains only to the amount due plaintiff as a result of the State defendant's wrongful implementation of the GHSBP. Any dispute with the amount of plaintiff's pre-GHSBP SNAP benefits should have been raised within the relevant certification period, see 7 C.F.R. § 273.15(g) ("A household shall be allowed to request a hearing on any action by the State agency or loss of benefits which occurred in the prior 90 days. * * * In addition, at any time within a certification period a household may request a fair hearing to dispute its current level of benefits."), and is irrelevant to the calculation of SNAP benefits to be restored to the Graves class members, including plaintiff, as a result of the State defendant's wrongful implementation of the GHSBP.

Moreover, since the Notices explained to all Graves class members, including plaintiff: (a) that they are entitled to restoration of SNAP benefits as a result of the wrongful implementation of the GHSBP; (b) the amount of such restored SNAP benefits, including the basis for the computation of that amount and any offsetting that was done, i.e., the COLA to SSI; (c) the method of restoration; (d) the right to appeal through the fair hearing process; (e) the procedure and time limits for requesting a fair hearing; (f) the right to present written and oral evidence at a fair hearing; (g) a toll-free telephone number for questions or assistance; (h) the right to representation and the availability of free legal representation; and (i) the right to review their respective case files and to obtain copies of any documents therein, they are sufficient under both federal and state law. See 7 C.F.R. §§ 273.13(a)(2) and 273.17(b); 18 N.Y.C.R.R. §§ 358-2.2(a). Accordingly, plaintiff's second cause of action, challenging the sufficiency of the Notices, is dismissed with prejudice for failure to state a claim for relief.

35

b.      Opportunity to Be Heard

The State defendant, relying upon 7 C.F.R. § 273.12(e)(2)(ii), contends that since the

January 1, 2005 COLA to SSI was a "mass change," "plaintiff was not entitled to challenge the

implementation of the January 1, 2005 SSI COLA mass change adjustment regarding the issuance

of his restored SNAP benefits which was dictated by the <u>Graves</u> court." (State Mem. at 23-24).

Contrary to the State defendant's contention, 7 C.F.R. § 273.12(e)(2)(ii) is not applicable in

this case because that provision pertains only to mass changes in public assistance and general

assistance payments. 7 C.F.R. § 273.12(e)(2). Rather, subsection (3) to Section 273.12(e) of Title

7 of the Code of Federal Regulations, in effect at the time of the January 1, 2005 SSI COLA,

expressly applies to COLAs to federal benefits. That regulation provides, in relevant part:

> "e) Mass changes. Certain changes are initiated by the State or Federal government which
> may affect the entire caseload or significant portions of the caseload. These changes
> include, but are not limited to, * * * periodic cost-of-living adjustments to * * *
> Supplemental Security Income (SSI) and other Federal benefits * * *.
>
> * * *
>
> (3) Mass changes in Federal benefits. The State agency shall establish procedures
> for making mass changes to reflect cost-of-living adjustments (COLAs) in benefits
> * * *, where information on COLA's is readily available and is applicable to all or a
> majority of those programs' beneficiaries. * * *

7 C.F.R. § 273.12(e)(3).

With respect to all mass changes in federal benefits, 7 C.F.R. § 273.12(e) provides, in relevant

part:

> (4) Notice for Mass Changes. When the State agency makes a mass change in food
> stamp eligibility or benefits by simultaneously converting the caseload or that
> portion of the caseload that is affected, or by conducting individual desk reviews in
> place of a mass change, it shall notify all households whose benefits are reduced or
> terminated in accordance with the requirements of this paragraph, * * *; and (i) At a
> minimum, the State agency shall inform the household of: (A) The general nature of
> the change; (B) Examples of the change's effect on households' allotments; (C) The

month in which the change will take effect; (D) The household's right to a fair hearing; (E) The household's right to continue benefits and under what circumstances benefits will be continued pending a fair hearing; (F) General information on whom to contact for additional information; and (G) The liability the household will incur for any overissued benefits if the fair hearing decision is adverse. * * *

(5) Fair hearings. The household shall be entitled to request a fair hearing when it is aggrieved by the mass change.

(6) Continuation of benefits. A household which requests a fair hearing due to a mass change shall be entitled to continued benefits at its previous level only if the household meets three criteria; (i) The household does not specifically waive its right to a continuation of benefits; (ii) The household requests a fair hearing in accordance with § 273.13(a)(1); and (iii) The household's fair hearing is based upon improper computation of food stamp eligibility or benefits, or upon misapplication or misinterpretation of Federal law or regulation.

Thus, contrary to the State defendant's contention, the applicable federal regulation does not limit challenges to the State defendant's implementation of a mass change to SNAP benefits to "issues relating to food stamp eligibility or [whether] benefits were improperly computed." (State Mem. at 23). Rather, any household "aggrieved by the mass change" is entitled to request a fair hearing in accordance with federal regulations. 7 C.F.R. § 273.12(e)(5). The limitation that a household's request be based upon "improper computation of food stamp eligibility or benefits, or upon misapplication or misinterpretation of Federal law or regulation," affects only the household's right to receive continued benefits at its previous level. See 7 C.F.R. § 273.12(e)(6). Accordingly, the branch of the State defendant's motion seeking dismissal of plaintiff's due process claims relating to the January 1, 2005 COLA to SSI is denied.


5.      Arbitrary and Capricious Claims

The State defendant contends that plaintiff's claims alleging that its conduct was "arbitrary and capricious" "sound[] in the legal standard for an Article 78 Special proceeding pursuant to the

37

New York Civil Procedure [sic] Law and Rules (C.P.L.R.)," (State Mem. at 24), and are time-barred because this action was not commenced within the four (4)-month limitations period applicable to Article 78 proceedings.

Administration of SNAP is entrusted to state agencies under 7 U.S.C. § 2020(a). "State agencies are also responsible for remedying underissuances and improper denials of [SNAP] benefits." Terio v. Johann, No. 05 Civ. 5918, 2006 WL 2819659, at * 3 (S.D.N.Y. Sept. 29, 2006), aff'd, 257 Fed. Appx. 374 (2d Cir. Dec. 11, 2007) (citing 7 U.S.C. § 2020(b)[6]).

"Congress places ultimate responsibility for the enforcement of [SNAP] with the Secretary of Agriculture." Terio, 2006 WL 2819659, at * 3; see 7 U.S.C. § 2020(g). Federal regulations "provide more detailed procedural requirements for state and local agencies administering [SNAP]." Terio, 2006 WL 2819659, at * 3. Section 273.17(c)(1) of Title 7 of the Code of Federal Regulations provides, in relevant part, that "[i]f the State agency determines that a household is entitled to restoration of lost benefits, but the household does not agree with the amount to be restored as calculated by the State agency or any other action taken by the State agency to restore lost benefits, the household may request a fair hearing within 90 days of the date the household is notified of its entitlement to restoration of lost benefits." Section 273.15(c)(1) of Title 7 of the Code of Federal Regulations provides, in relevant part, that "[w]ithin 60 days of receipt of a request for a fair hearing, the State agency shall assure that the hearing is conducted, a decision is

---

[6] Section 2020(b) provides, in relevant part, that "[w]hen a State agency learns * * * that it has improperly denied, terminated, or underissued benefits to an eligible household, the State agency shall promptly restore any improperly denied benefits to the extent required by subsection (e)(11) of this section and section 2023(b) of this title, and shall take other steps to prevent a recurrence of such errors where such error was caused by the application of State agency practices, rules or procedures inconsistent with the requirements of this chapter or with regulations or policies of the Secretary issued under the authority of this chapter."

reached, and the household and local agency are notified of the decision."

"If a New York applicant wishes to challenge the resolution of her application after a fair hearing, she must do so by bringing a proceeding in state court under Article 78 of the New York Civil Practice Law and Rules." Terio, 2006 WL 2819659, at * 3.  Moreover, "under New York State law, Article 78 is a form of proceeding available to compel public officials to comply with their responsibilities[,]" Vandor, Inc. v. Militello, 301 F.3d 37, 39 (2d Cir. 2002), and to "challeng[e] a specific decision of a state administrative agency." Campo v. New York City Employees' Retirement System, 843 F.2d 96, 101 (2d Cir. 1988) (quotations and citation omitted); see also Solnick v. Whalen, 49 N.Y.2d 224, 230, 425 N.Y.S.2d 68, 401 N.E.2d 190 (1980) (holding that the plaintiffs could challenge the downward revision of their Medicaid reimbursement rates in "a proceeding instituted pursuant to CPLR article 78 to review the determination made by the State agency.")[7]

Although plaintiff seeks declaratory and injunctive relief, his state law claims, i.e., that the State defendant's determination to reduce the amount of his restored SNAP benefits on account of the January 1, 2005 COLA to SSI, Notice of Restored SNAP Benefits and failure to convene a fair hearing are arbitrary and capricious, are cognizable in an Article 78 proceeding.  Section 217(1) of the New York Civil Practice Law and Rules provides, in relevant part, that "[u]nless a shorter time is provided in the law authorizing the proceeding, a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding

---

[7] Article 78 provides, in relevant part, that "[t]he only questions that may be raised in a proceeding [against a state body or officer] are: 1. whether the body or officer failed to perform a duty enjoined upon it by law; or * * * 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, * * *."

39

upon the petitioner * * *, or after the respondent's refusal, upon the demand of the petitioner * * * to perform its duty * * *." Thus, the statute of limitations for instituting an Article 78 proceeding is generally four (4) months, Vandor, 301 F.3d at 39; People v. Liden, 19 N.Y.3d 271, 275-76, 946 N.Y.S.2d 533, 969 N.E.2d 751 (N.Y. 2012), from the date an administrative determination becomes "final and binding." Walton v. New York State Department of Correctional Services, 8 N.Y.3d 186, 194, 831 N.Y.S.2d 749, 863 N.E.2d 1001 (N.Y. 2007).

"An administrative determination becomes 'final and binding' when two requirements are met: completeness (finality) of the determination and exhaustion of administrative remedies." Walton, 8 N.Y.3d at 194, 831 N.Y.S.2d 749. "First, the agency must have reached a definitive position on the issue that inflicts actual, concrete injury and second, the injury inflicted may not be. . . significantly ameliorated by further administrative action or by steps available to the complaining party." Id. at 194-95, 831 N.Y.S.2d 749 (quotations and citations omitted). "The reason for the short statute is the strong policy, vital to the conduct of certain kinds of governmental affairs, that the operation of government not be trammeled by stale litigation and stale determinations." Solnick, 49 N.Y.2d at 232, 425 N.Y.S.2d 68 (quotations and citation omitted).

A plaintiff cannot avoid the applicable statute of limitations "by labeling its action as one seeking declaratory or injunctive relief." Town of Orangetown v. Gorsuch, 718 F.2d 29, 41-42 (2d Cir. 1983); see also Liden, 19 N.Y.3d at 276, 946 N.Y.S.2d 533 ("[A] person challenging an agency determination cannot circumvent the time limitation, or other limitations on article 78 review, by asserting his or her arguments in a different kind of proceeding.") "Article 78 normally provides what is in effect an exclusive remedy." Liden, 19 N.Y.3d at 276, 946 N.Y.S.2d 533.

"New York law requires its courts to look to the substance of a claim to determine which

40

statute of limitations applies." Gorsuch, 718 F.2d at 42; see also Vigilant Ins. Co. of America v. Housing Authority of City of El Paso, Texas, 87 N.Y.2d 36, 41, 87 N.Y.S.2d 36, 660 N.E.2d 1121 (N.Y. 1995) (holding that "[c]ourts must look to the underlying claim and the nature of the relief sought to determine the applicable period of limitation [to a declaratory judgment action] * * *" (quotations and citation omitted), and that "a court's inquiry focuses on 'the substance of [the] action to identify the relationship out of which the claim arises and the relief sought' * * *." (quoting Solnick, 49 N.Y.2d at 229, 425 N.Y.S.2d 68)). "If th[e] [court's] examination reveals that a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern." Gorsuch, 718 F.2d at 42; see also Gress v. Brown, 20 N.Y.3d 957, 959, 958 N.Y.S.2d 675, 982 N.E.2d 595 (N.Y. 2012) ("If a declaratory judgment action could have been commenced by an alternative proceeding for which a specific limitation period is statutorily provided, then that period applies instead of CPLR 213(l)'s six-year catchall provision * * *." (quotations and citation omitted)). "If the period for invoking the other procedural vehicle for relief has expired before the institution of the action for declaratory relief, the latter action also is barred." Press v. Monroe County, 50 N.Y.2d 695, 701, 431 N.Y.S.2d 394, 409 N.E.2d 870 (1980) (quoting Solnick, 49 N.Y.2d at 230, 425 N.Y.S.2d 68). "A salutary result of the application of the limitation period appropriate to the other form of judicial proceeding will be to preclude resort by a dilatory litigant to the declaratory remedy for the purpose of escaping a bar of time which has outlawed the other procedure for redress * * *." Solnick, 49 N.Y.2d at 230, 425 N.Y.S.2d 68 (citation omitted).

Where, as here, a plaintiff challenges a state agency's administrative determination, as opposed to the validity of any legislation, as arbitrary and capricious, Article 78 review is available to him. Thus, plaintiff's claims that the State defendant's conduct was arbitrary and capricious are

subject to a four (4)-month statute of limitations, see Walton, 8 N.Y.3d at 194, 831 N.Y.S.2d 749; see also Solnick, 49 N.Y.2d at 232, 425 N.Y.S.2d 68, and should have been raised by commencing an Article 78 proceeding in state court within four (4) months of the OTDA's October 25, 2012 letter denying his request for a fair hearing, or by February 25, 2013. Since this action was not commenced until March 28, 2013, more than one (1) month after the statute of limitations expired, the arbitrary and capricious claims against the State defendant are dismissed with prejudice as time-barred.[8]

III.     Conclusion

For the reasons stated herein, the branches of the State defendant's motion seeking dismissal of plaintiff's arbitrary and capricious claims and second cause of action are granted; plaintiff's arbitrary and capricious claims and second cause of action against the State defendant are dismissed in their entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief; and the motion is otherwise denied.

SO ORDERED.

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 5, 2014
        Central Islip, N.Y.

---

[8] Since federal claims remain against the State defendant, the branch of its motion seeking dismissal of any remaining pendent state law claims is denied.